UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GREGORY FOLEY,

                                    Petitioner,

v.

SCOTT KERNAN, Secretary, et al.,

                                    Respondents.

Case No.: 16-CV-408 JLS (BGS)

**ORDER ADOPTING REPORT AND RECOMMENDATION RE PETITION FOR HABEAS CORPUS AND DENYING AS MOOT MOTION FOR REVIEW**

(ECF Nos. 37, 48, 50)

Petitioner has filed a Petition for Writ of Habeas Corpus, ("Petition," ECF No. 1), to which Respondent Scott Kernan has filed an Answer, (ECF No. 26). Petitioner then filed a Traverse, (ECF No. 36). Magistrate Judge Bernard G. Skomal issued a Report and Recommendation, recommending the Court deny Petitioner's Petition and deny his Request for Evidentiary Hearing, ("R&R," ECF No. 37). Petitioner filed objections to the R&R. ("R&R Obj.," ECF No. 42.) Respondent did not file a reply to Petitioner's objections. Petitioner also filed Motion to Review his prior Motion for 2nd Extension of

Time, (ECF No. 48),[1] and an *ex parte* motion to determine the disposition of his writ of habeas corpus, (ECF No. 50).[2]

Having considered the Parties' arguments and the law, as well as the underlying state court record, the Court **OVERRULES** Petitioner's Objections, **ADOPTS** Judge Skomal's Report and Recommendation, and **DENIES** Petitioner's Petition for Habeas Corpus.

## BACKGROUND

Judge Skomal's Report and Recommendation contains a complete and accurate recitation of the relevant portions of the factual and procedural histories underlying Defendant's pending Motion to Dismiss. (*See* R&R 3–16.)[3] This Order incorporates by reference the background as set forth therein.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties in connection with a magistrate judge's R&R. The district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). However, in the absence of timely

---

[1] Petitioner's Motion to Review asks the Court to accept his prior motion for a second extension of time to respond to Judge Skomal's R&R, which Petitioner filed on October 19, 2017. (ECF No. 48, at 3.) The Second Extension was docketed on October 25, 2017, (ECF No. 40), and then Petitioner filed his Objection to the R&R on December 1, 2017. He then filed a prior motion for review of his Second Extension on December 27, 2017, (ECF No. 45). On January 17, 2018, the Court denied as moot Petitioner's Motions requesting an extension of time to object because he had filed his Objection. The Court explained that his requests were moot because the Objection to the R&R was already filed and further stated that the Court would consider his objections. This Order considers his objections. Therefore, the Court **DENIES AS MOOT** Petitioner's Motion for Review, (ECF No. 48).

[2] Petitioner's *ex parte* motion requests the Court rule on his petition for writ of habeas corpus. Because this Order constitutes the Court's ruling on Petitioner's petition, the Court **GRANTS** Petitioner's Motion, (ECF No. 50).

[3] Pin citations to docketed material refer to the CM/ECF page numbers electronically stamped at the top of each page.

objection, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

## ANALYSIS

Petitioner filed the present Petition pursuant to 28 U.S.C. § 2254(d). Judge Skomal reviewed each of Petitioner's arguments, and the Court will do the same. Petitioner has objected to various findings of the R&R; the Court will therefore review *de novo* the portions of the R&R to which Petitioner objects.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court may grant habeas relief only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court . . . ; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

Under § 2254(d)(1), federal law must be "clearly established" in order to support a habeas claim. Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406. A state court decision does not have to demonstrate an awareness of clearly established Supreme Court precedent, provided neither the reasoning nor the result of the state court decision contradict such precedent. *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

*Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119–22 (2007). With this general framework in mind, the Court turns to Petitioner's claims.

## I.     Claim I: Insufficient Evidence

Petitioner's first claim is that the evidence adduced at trial was not sufficient to support his conviction for elder abuse. (Petition 20.) Petitioner argues that the evidence failed to show he used the hammer in a manner likely to cause great bodily injury and his father did not suffer a serious injury. (*Id.* at 30.) Petitioner presented this claim to the California Court of Appeal on direct appeal, which affirmed the trial court, (*see* Lodgment No. 6, ECF No. 27-11, at 4–6). He also presented the claim to the California Supreme Court in his petition for review, which was denied without a written opinion. (*See* Lodgment No. 7, ECF No. 27-12; Lodgment No. 8, ECF No. 27-13.) Accordingly, Petitioner properly exhausted his state court remedies before bringing his first claim in federal court.

Judge Skomal determined that the California Court of Appeal's determination that there was sufficient evidence was neither contrary to, nor involved an unreasonable

application of, clearly established federal law. (R&R 23 (citations omitted).) Petitioner objects to this finding. Therefore, the Court reviews Petitioner's claim *de novo*.

Petitioner's claim requires this Court to examine the state court's reasoning. Where, as here, the higher state court does not provide any reasoning for its decision, federal courts "look through" to the last reasoned state court opinion. Federal habeas courts apply the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Because the California Supreme Court did not issue a written opinion, the Court assumes it rejected Petitioner's claim on the same ground as the California Court of Appeal, as long as the earlier opinion "fairly appear[s] to rest primarily upon federal law." *Id.* (alteration in original) (quoting *Ylst*, 501 U.S. at 803).

The California Court of Appeal relied on two cases to supply the requisite holding for Petitioner's insufficient evidence claim: *People v. Johnson*, 26 Cal. 3d 557, 575–77 (1980), and *People v. Bolin*, 18 Cal. 4th 297, 331 (1998), (Lodgment No. 6, at 5). In turn, those cases directly rely on *Jackson v. Virginia*, 443 U.S. 307 (1979), which supplies the federal standard for insufficient evidence. *Jackson* held that a habeas court must ask "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see McDaniel v. Brown*, 558 U.S. 120, 132–33 (2010) (applying *Jackson*). Thus, the California Court of Appeal correctly identified the governing legal rule. The only remaining question is whether the court reasonably applied the precedent to Petitioner's claim. *See White*, 134 S. Ct. at 1706–07.

Applying *Jackson* is a two-part process. "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (quoting *Jackson*, 443 U.S. at 319). This means that when "faced with a record of historical facts that supports conflicting

inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* (quoting *Jackson*, 443 U.S. at 326.)  Second, a court must determine whether this evidence is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration in original) (quoting *Jackson*, 443 U.S. at 319).  "This second step protects against rare occasions in which 'a properly instructed jury may . . . convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt[.]'" *Id.* (alterations in original) (quoting *Jackson*, 443 U.S. at 317).

The Court applies the two-part *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis v. Woodford*, 384 F.3d 628, 639 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 324 n.16).  Petitioner was convicted of elder abuse.  (Answer 11.)  A defendant is guilty of elder abuse when he "'knows or reasonably should know that a person is an elder . . . and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." *People v. Racy*, 148 Cal. App. 4th 1327, 1332 (Ct. App. 2007) (quoting Cal. Penal Code § 368(b)(1)).  The extent of the injury is not determinative and the victim need not be injured at all.  *People v. Hopkins*, 78 Cal. App. 3d 316, 320 (Ct. App. 1978).  Whether force is likely to produce great bodily harm is a question of fact.  *People v. Muir*, 244 Cal. App. 2d 598, 604 (Ct. App. 1966).

Here, the California Court of Appeal applied the *Jackson* standard as follows:

> This case illustrates the difference between the role of the original fact finder deciding guilt or innocence and an appellate court reviewing the conviction.  Milford's testimony was problematic and somewhat inconsistent.  However, Milford insisted that Foley attempted to hit him in the face with a hammer.  [Lodgment No. 8, at 52, 54, 60, 65.]  Milford also maintained that Foley placed his knee on Milford's neck and

choked him until he became unconscious. [Lodgment No. 8, at 52-53, 55–56.]

A jury could have rejected Milford's testimony, but it did not do so. It is apparent the jury accepted Milford's testimony as true. It is not our role to second guess the jury's credibility decision or to reweigh the evidence. If the jury credited Milford's testimony there is plainly enough evidence to show the use of force likely to cause great bodily injury.

Swinging a hammer at a person's face in an effort to hit the person is obviously potentially deadly force. Likewise, using a knee placed against an elderly person's neck to choke the person into unconsciousness poses a grave risk of death or great bodily injury. On this record, it is only fortuitous that the 86-year-old victim was not killed or gravely injured. As we said at the outset of this discussion, there is more than adequate evidence in the record to support the conviction for count 3.

(Lodgment No. 6, at 5–6).

Judge Skomal details the evidence the jury heard at trial including Milford's testimony that Petitioner "had a God damn knife or a hammer and beat on me" and that Milford "bit him on the left arm" causing Petitioner to drop the hammer. (R&R 21 (quoting Lodgment No. 9, ECF No. 27-14, at 51–53).) Milford also testified that Petitioner "tried to hit me here" and pointed to the right side of his face. (*Id.* at 22 (quoting Lodgment No. 9, at 54).) As the Court of Appeal noted, there is some inconsistency in Milford's testimony. For example, he testified that Petitioner broke both locks on the door, but Officer Weber testified that he had to kick in the locked bedroom door. Indeed, Petitioner raises this point in his objections to the R&R. (R&R Obj. 41.)

*Jackson*'s first step requires the Court to view the facts in a light most favorable to the prosecution. Thus, the Court assumes that any ambiguity in Milford's testimony was resolved in the mind of the factfinder in favor of the prosecution. The second step requires the Court to determine whether this evidence, properly construed, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Here, the circumstances likely to produce great harm or death were Petitioner swinging the hammer and pinning Milford to the floor with his knee. Petitioner need not have actually

injured Milford, *see Hopkins*, 78 Cal. App. 3d at 320; the jury could have believed that Petitioner caused mental suffering to Milford. *See* Cal. Penal Code § 368(b)(1). The Court finds the California Court of Appeal reasonably applied *Jackson*.

Petitioner's objections do not counsel a different result. At the outset, the Court notes that many of Petitioner's objections as to his first claim speak to alleged ineffective assistance of counsel on the part of his trial and appellate counsel. (*See* R&R Obj. 35–40.) The Court addresses those objections below in Petitioner's Ineffective Assistance of Counsel claim. *See infra* section VIII.A. As discussed, Petitioner objects to the testimony that he broke locks to bathroom: "No where [sic] in a police report or in testimony does it state, petitioner broke the locked doors and hit (Milford) with the hammer, and then stabbed him with a knife, also he was not covered with blood." (R&R Obj. 40–41.) Instead, he contends that police report states that officers were the ones who broke the locked doors and the police found Milford sitting on the bed. (*Id.* at 41.) This discrepancy in Milford's testimony with the police report does not overcome the deference owed to the finder of fact—the jury. The jury believed Milford's testimony, despite the discrepancy, and this Court does not disturb their finding because a rational trier of fact could have found the essential elements for elder abuse.

Next, Petitioner states that he has provided documents that were withheld from court, showing that law enforcement modified evidence. (*Id.*) For example, there is a radiology report showing that the bullet he was shot with was still in his body, which contradicts the police statement that the bullet went through his body. (*Id.*) There are several defects in this argument. First, if the Court were to accept Petitioner's argument about his bullet wounds, this has nothing to do with his aggression towards his father resulting in elder abuse. Second, even assuming the police fabricated evidence, the jury could have relied exclusively on Milford's testimony—not the supposedly fabricated police evidence—to find all the elements of elder abuse beyond a reasonable doubt.

Petitioner argues that his constitutional rights were violated, that he presented facts in his Traverse demonstrating his rights were violated, and cites *DiBenedetto v. Hall*, 272

F.3d 1 (1st Cir. 2001), to that effect. (R&R Obj. 41.) Petitioner's argument here is not entirely clear, but the Court assumes that Petitioner is referring to his argument in his Traverse where he states that the prosecution presented evidence at trial that was obtained by illegal means and should be excluded. (*See* Traverse 10.) It appears Petitioner renews this argument in his objections because he argues he meets the *Jackson* standard. He further contends all law enforcement's evidence was tainted and should be considered "Fruit of the Poisonous Tree." (R&R Obj. 42.) The Court addresses Petitioner's arguments concerning supposedly illegally obtained evidence below. *See infra* section IV.

Petitioner presents no further objection as to Judge Skomal's findings on the first claim and the Court agrees with Judge Skoma'. Accordingly, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** Judge Skomal's R&R as to claim one.

## II. Exhaustion of Remaining Claims

Respondent states that Petitioner's remaining claims were presented for the first time to the California Supreme Court and were not presented to the California Court of Appeal. (Answer 13.) As such, Petitioner's remaining claims are unexhausted and a federal habeas court generally cannot hear unexhausted claims. 28 U.S.C. § 2254(b)(1)(A); *Castille v. Peoples*, 489 U.S. 346, 349 (1989). "28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 276–77 (1971)). The Supreme Court has held "that a claim remains unexhausted for lack of 'fair presentation' where, as here, it was raised for the first time on discretionary review to the state's highest court and denied without comment. *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (citing *Castille*, 489 U.S. at 351).

Judge Skomal determined there are two reasons this Court may hear Petitioner's unexhausted claims on the merits. First, he reasoned that § 2254(b)(2) allows district courts to deny an application on the merits even if Petitioner's claims are unexhausted. (R&R 25.) Second, he found that Petitioner's claims would be procedurally barred under

California law if he returned to California state court and the Court may reach the merits of a procedurally defaulted claim. (*See id.* at 25–26.)

28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See also Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." (citing § 2254(a)). The Ninth Circuit has held that "a federal court may deny an unexhausted petition on the merits only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005); *see Granberry v. Greer*, 481 U.S. 129, 135 (1987).

The Court agrees with Judge Skomal that it may hear Petitioner's second through seventh claim on the merits as long as the claims do not raise a colorable federal claim under *de novo* review. Respondent likewise requests Petitioner's remaining claims be examined on the merits. (Answer 14.) Because the Court reviews Petitioner's unexhausted claims *de novo*, it need not reach Judge Skomal's procedural default finding.

## III. Claim Two: Exclusion of Testimony

Petitioner's second claim is that the trial court erred in excluding his mother Beverly's testimony at trial. (R&R 27–28 (citing Petition 20, 26, 28–29).) Defense counsel filed a pre-trial motion requesting an evidentiary hearing concerning Beverly's competency to testify at trial. (*Id.* at 28 (citing Lodgment No. 1, Clerk's Transcript ("CT"), ECF No. 27-1, at 25).) The trial court granted the hearing, pursuant to California Evidence Code §§ 402 and 701, because Beverly suffered from dementia and had difficulty recalling any of the events of the alleged incident. (*Id.* (citing Lodgment No. 3, Reporter's Appeal

Transcript ("RT"), ECF Nos. 27-3 to 27-8, at 4).)[4]  At the evidentiary hearing, Beverly repeatedly asked "why are we here" and "what's this all about." (*Id.* (citing RT 41–42, 44).) She did not remember being injured at the time of the incident and did not remember the police coming to her home. (*Id.* (citing RT 42).) The trial court made a specific finding that Beverly no longer had personal knowledge of the events in question and limited her testimony to identifying that Petitioner was her son. (*Id.* at 29 (citing RT 47–49).)

Petitioner contends that select portions of Beverly's evidentiary hearing demonstrate that she was competent to testify and the jury should have weighed her credibility. (Petition 28.) Respondent contends that the trial court's competency determination is a matter of state law and does not raise a cognizable federal question. (Answer 14.) Accordingly, federal habeas courts cannot grant a petition solely for errors in state law. (*Id.* (citing, e.g., *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam)).) Petitioner counters that the decision to exclude his mother's testimony violated his federal right to due process and to present a defense, guaranteed under the Sixth and Fourteenth Amendments. (Traverse 29–34.)

This issue involves two competing interests. As Respondent correctly points out, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court should only consider a perceived error of state law where the error amounts to a violation of due process or equal protection clauses of the Fourteenth Amendment. *See id.* at 68 (examining whether admission of evidence under California law violated the petitioner's federal constitutional rights). A defendant's due process right includes "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This includes presenting witnesses in one's own defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

---

[4] The Reporter's Appeal Transcript (Lodgment No. 3) is lodged at ECF Nos. 27-3 to 27-8. While the Court generally refers to pin cites electronically stamped by the CM/ECF system, the Court will refer to the original page numbers in the Reporter's Appeal Transcript when citing to Lodgment No. 3.

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (alteration in original) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). This right is not unlimited—evidence rules cannot "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* The *Holmes* court provided several examples of arbitrary rules of evidence including a state statute that "barred a person who had been charged as a participant in a crime from testifying in defense of another alleged participant unless the witness had been acquitted." *Id.* at 325 (citing *Washington v. Texas*, 388 U.S. 14, 22–23 (1967)). Conversely, well-established rules of evidence permit judges to "exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of issues, or potential to mislead the jury." *Id.* at 326 (citations omitted); *see also id.* at 326–27 (permitting judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues'" (alterations in original) (quoting *Crane*, 476 U.S. at 689–90)).

Judge Skomal determined that Petitioner did not establish constitutional error in the trial court's exclusion of Beverly's testimony. (R&R 31.) Petitioner argued the trial court violated California Evidence Code § 780, which provides that "[e]xcept as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has a tendency in reason to prove or disprove the truthfulness of his testimony." As Judge Skomal points out, § 780 clearly references other statutory sections and Evidence Code § 702 requires a witness to have personal knowledge of the matter. (R&R 31.) Thus, § 702 is an exception to § 780. The trial court judge relied on § 702 to consider various evidence tending to show that Beverly did not have the capacity remember the events of September 1, 2013. (*See id.*) Judge Skomal concluded that California's evidentiary rules are not arbitrary. (*Id.* at 32 (citing *Scheffer*, 523 U.S. at 308; *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).)

12

Petitioner's objections to the R&R cite several cases where courts permitted a witness to testify despite potential issues with the witness. (R&R Obj. 43.) First, Petitioner cites *People v. McCaughan*, 49 Cal. 2d 409 (1957), for the proposition that when a witness gives different answers then previous testimony that witness may not be disqualified. (R&R Obj. 43.) *McCaughan* did state that a "witness's competency depends on his ability to perceive, recollect, and communicate. Whether he did perceive accurately, does recollect, and is communicating accurately and truthfully are questions of credibility to be resolved by the trier of fact." 49 Cal. 2d at 420 (citation omitted). The quoted language appears to support Petitioner's assertion; however, *McCaughan* also made clear that "a challenged witness's capacities to perceive, recollect, and communicate truthfully were all preliminary facts to be determined exclusively by the court in the exercise of its sound discretion." *People v. Anderson*, 25 Cal. 4th 543, 572 (2001) (citing *McCaughan*, 49 Cal. 2d at 421).

Further, the Evidence Code was amended in 1965, after *McCaughan*, and modified the testimonial competence framework. *See id.* Under the current framework, a person is disqualified as a witness only if he or she is "[i]ncapable of *expressing* himself or herself [understandably] concerning the [testimonial] matter" or is "[i]ncapable of *understanding the duty of a witness to tell the truth*." *Id.* at 572–73 (alterations in original) (citing Cal. Evid. Code § 701). The California Supreme Court reiterated that the capacity to communicate or understand the duty to tell the truth is a preliminary fact to be determined exclusively by the court and the determination will be upheld in the absence of a clear abuse of discretion. *Id.* at 573 (citing Cal. Evid. Code § 405). Here, the trial court did not determine that Beverly could not testify because her answers changed from prior testimony, as Petitioner seems to suggest in his objections. The trial court determined she no longer had personal knowledge of the incident in question, as evidenced by her dementia and inability to understand what was going on during the evidentiary hearing. Such a determination was well within the discretion of the trial court under the testimonial competency framework.

13

Second, Petitioner cites *People v. Blagg*, 10 Cal. App. 3d 1035 (Ct. App. 1970), to support his contention that "even if a witness has mental issues, that include fantasies, it does not effect ones [sic] ability to communicate." (R&R Obj. 43.) In *Blagg*, a victim was confined with the defendant in a county jail and suffered assault at the hands of the defendant. 10 Cal. App. 3d at 1038. The victim suffered from mental issues and the court conducted a competency hearing, as required by Evidence Code §§ 701 and 403. *Id.* at 1039. The trial court determined that the witness was "able to give information concerning his prior offenses in an intelligible manner," a doctor opined that the witness's mental condition did not affect his ability to communicate or distinguish between truth and falsity, and the victim exhibited an understanding of his obligation to tell the truth. *Id.* at 1039–40. The trial court found the witness competent and the Court of Appeal affirmed because the competency decision lay within the trial court's discretion. *Id.* at 1040.

Here, the facts are distinguishable from *Blagg*. Beverly could not understand basic questions at her evidentiary hearing and repeatedly asked "why are we here" and "what's this all about." (RT 23–24, 26.) She did not remember being injured at the time of the incident and did not remember the police coming to her home. Her son Christopher testified that Beverly's condition had deteriorated to the point where she had to live in a secure dementia and Alzheimer's ward. (*Id.* at 75.) Beverly did not know she lived in a secure dementia facility or that she had been diagnosed with dementia. (*Id.* at 37.) Finally, Beverly's treating physician testified that Beverly suffered a concussion on September 1, 2013, which exacerbated her dementia. (*Id.* at 340–41.) Unlike the witness in *Blagg*, there is ample evidence for the trial court to determine that Beverly had no personal knowledge of the incident. Moreover, *Blagg*, *McCaughan*, and *Anderson* all teach that the decision to permit a witness to testify is committed to the sound discretion of the trial court.[5]

---

[5] Petitioner also cites *United States v. Peyro*, 786 F.2d 826 (8th Cir. 1986). (R&R Obj. 43.) This case also holds that witness competency decisions are a matter of discretion for the trial court. 786 F.2d at 830–31 (citation omitted). There, the trial court determined that while a witness could not recall detail, "she ha[d] a broad, general recollection" and permitted her to testify. *Id.* at 831. The trial court in Petitioner's case determined that Beverly did not have *any* recollection of the critical events.

Accordingly, the evidence supports the trial court's decision to disallow Beverly's testimony.

Judge Skomal also found that even if the trial court committed error, the error was harmless. (R&R 32–33.) Judge Skomal determined that Petitioner has not demonstrated that Beverly's testimony was necessary for a meaningful defense or even that she was a favorable witness for the defense. (*Id.* at 33.) Indeed, as Judge Skomal points out the jury heard Beverly's voice on a 911 recording saying Petitioner is "acting up and threatening as usual," that "I've been attacked . . . by my son," that Petitioner "had a knife," and that "I am bleeding to death." (*Id.* (quoting Lodgment No. 2, ECF No. 27-2, at 12, 15–16).) Officer Cosby testified that he asked Beverly how she had been injured and she replied, "[m]y son did it with his hands and fists." (*Id.* (quoting RT 171).)

In his objections, Petitioner raises a variety of errors purportedly amounting to actual prejudice. For example, Petitioner states that his defense attorney was supposed to show a psychiatrist evaluated Beverly before the evidentiary hearing. (R&R Obj. 44.) Or, a witness at the evidentiary hearing, Dr. Tomanenh, did not personally examine Beverly before opining as to her condition. (*Id.* at 45.) However, these purported errors only speak to the trial court's decision to exclude Beverly's testimony. The harmless error analysis assumes that even if the trial court's decision was erroneous then such an error did not result in a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 775 (1946)). Petitioner's objections do not illustrate how, assuming Beverly testified, the jury's verdict would be different.

Petitioner also contends that his mother was answering coherently at trial and his defense counsel erred by asking for a competency hearing. (R&R Obj. 46.) The Court discusses allegations of ineffective assistance of counsel later in this Order. *See infra* section VIII.A. Petitioner argues that the R&R engages in speculation as to how Beverly would have testified at trial. (*Id.* at 47.) He asserts that "[b]y the witness stating in testimony that the petitioner did not strike her, any reasonably [sic] juror, would of

concluded, this to be true." (*Id.*) At her competency hearing conducted outside the presence of the jury, Beverly was asked "Do you remember if Greg ever hurt Milford or you physically?" (RT 31.) She responded in the negative. (*Id.*) However, Beverly also testified that she could not remember whether the police or paramedics visited her home in September 2013. (*Id.* at 42.) Furthermore, Judge Skomal lays out several pieces of evidence that directly contradict Beverly's statement in the competency hearing that her son did not harm her or her husband. (*See* R&R 33.) For example, Beverly's 911 call discloses that she told the 911 dispatcher that she was attacked by her son. (Lodgment No. 2, at 15.) Officer Cosby testified that at the crime scene Beverly told him, "[m]y son did it with his hands and fists." (RT 171.) A doctor testified that the knife wounds sustained by Beverly were defensive. (*Id.* at 383.) In sum, Petitioner can cite one colloquy between Beverly and Petitioner's attorney that could affect or influence the jury's verdict. Yet, the weight of the remaining evidence concerning Beverly's testimony demonstrates that even if the trial court erred by precluding Beverly from testifying at trial the error was harmless.

Therefore, the Court **OVERRULES** Petitioner's objections and **ADOPTS** Judge Skomal's R&R as to claim two.

## IV. Claim Three: Evidence Suppression

Petitioner's third claim is that the hammer he was convicted of abusing his father with was illegally seized because his sister, brother, and his brother's girlfriend found the hammer while trespassing the bedroom where the incident took place. (R&R 34 (citing Petition 20, 26, 30–32).) Respondent contends that even if Petitioner's sister, brother, and brother's girlfriend were trespassing then Petitioner's federal rights were not violated because the actions could not be attributed to law enforcement. (Answer 15.)

Judge Skomal cites *Stone v. Powell*, 428 U.S. 465, 494 (1976), for the proposition that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (R&R 34.) California law provides such an opportunity. *See* Cal. Penal Code

§ 1538.5. Moreover, the Ninth Circuit has held that a habeas petitioner need not actually avail himself Penal Code § 1538.5 for a court to determine that the petitioner has a "full and fair litigation" of his Fourth Amendment claim. *Gordon v. Duran*, 895 F.2d 610, 613–14 (9th Cir. 1990) (citing *Stone*, 428 U.S. at 481–82). Here, California Penal Code § 1538.5 provided Petitioner with the opportunity to suppress the supposedly illegally seized hammer. Judge Skomal recommends denying Petitioner's third claim. (R&R 35.)

Petitioner's objects to Judge Skomal's conclusions by raising an ineffective assistance of counsel claim and argues, for the first time, that his attorney should have suppressed the hammer before trial. (R&R Obj. 50.) The Court addresses Petitioner's ineffective assistance of counsel claims below. *See infra* section VIII.A. Petitioner also argues that the person who found the evidence in question must file a police report and testify to qualify the report. (R&R Obj. 50 (citing *United States v. Dotson*, 821 F.2d 1034 (5th Cir. 1987)).) Petitioner then discusses how his rights were harmed by introduction of the hammer at trial. (*See id.*) Petitioner offers several additional reasons why the evidence should have been excluded. For example, "[a] private citizen obtaining evidence by an illegal seizer, and informing the officer as to how it was obtained, the evidence is inadmissible to be presented in an [sic] criminal trial." (*Id.* at 52 (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939); and *United States v. Paroutian*, 299 F.2d 486 (2d Cir. 1962)). Or, "when the private citizen entered the property of the petitioner without his permission and states he allegely [sic] found evidence, is fruit of a [sic] illegal search thereby the evidence was obtained by, "Exploitation of Illegality." (*Id.* (citing *Wong Sun v. United States*, 371 U.S. 471 (1963); and *United States v. Hernandez*, 279 F.3d 302 (5th Cir. 2002)).) Petitioner cites several more cases for the proposition that illegally seized evidence should be suppressed under the exclusionary rule. (*See id.* at 52, 54.)

All of Petitioner's objections miss Judge Skomal's critical insight: "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428

U.S. at 494 (footnotes omitted). Petitioner's arguments could have been raised in an effort to suppress illegally obtained evidence pursuant to California Penal Code § 1538.5. Whether or not they were actually raised does not matter for a federal habeas petition—the State afforded Petitioner the opportunity to litigate his Fourth Amendment claims.

Accordingly, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** Judge Skomal's R&R as to Petitioner's third claim.

## V. Claim Four: False Testimony

Petitioner's fourth claim is that his brother, Christopher, falsely testified at trial because: (1) Christopher testified he was present when the hammer was found despite a police report stating he said he was downstairs when the hammer was found; (2) an object the size of the hammer could not have been missed in the police search; and (3) Christopher was antagonistic to Petitioner because he wished to prevent Petitioner from inheriting from their parents' estate. (R&R 35 (citing Petition 21, 26, 37, 41, 56).) Respondent concedes that there may have been inconsistent statements by Christopher, but contends "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false." (Answer 16 (alteration in original) (quoting *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997)).)

Judge Skomal states that Christopher did not contradict his statement to police that he was not present when the hammer was found. (R&R 35–36.) Instead, as Judge Skomal explains, Christopher was shown a photograph of Petitioner's bed and asked if that was where the hammer was found. (*Id.* at 36.) Christopher testified, "I believe that's where it was found. I myself did not personally find it. I had so much going on. I believe Gina [Christopher's girlfriend] found it, and she immediately yelled for me." (*Id.* (quoting RT 80).) Judge Skomal concludes that Petitioner has not established that Christopher actually testified falsely or inconsistently and, therefore, Petitioner has failed to demonstrate that introduction of Christopher's testimony regarding the hammer was so prejudicial as to

render his trial fundamentally unfair.  (*Id.* (citing *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996)).)

Petitioner contends that the discrepancies in Christopher's testimony were not minor and that Christopher had to "make exact statements without the probability of even a minor disceptency [sic]."  (R&R Obj. 55.)  For example, Petitioner contends that Christopher initially stated that he immediately turned the evidence over to the police and then later changed his testimony that he turned the hammer over the next day.  (*Id.*)

At trial when asked whether he gave the hammer that Gina found to the police, Christopher responded "immediately."  (RT 79.)  On cross examination, he testified that the hammer "was turned over the same day because police were coming in and out constantly."  (*Id.* at 101.)  The police report that Petitioner includes in his R&R Objections also states that the police received the hammer during day of September 1, 2013, consistent with Christopher's testimony.  (R&R Obj. 16.)  Petitioner has not identified where the supposed discrepancy in testimony exists.

Even if Christopher's testimony contained minor inconsistent statements, such an issue is not dispositive.  As Respondent points out, "[t]he fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false."  *Croft*, 124 F.3d at 1119.  (*See* Answer 16.)  Therefore, Petitioner's contention that Christopher had to make statements without the possibility of minor discrepancies is not supported by law.  And, Petitioner has not established Christopher actually made conflicting statements.

Next, Judge Skomal examined whether Christopher's testimony about how Gina found the hammer deprived Petitioner of his right to confront Gina, the person who found the evidence.[6]  As Judge Skomal states, "[t]he Confrontation Clause does not apply to non-testimonial evidence."  (R&R 36 (citing *Davis v. Washington*, 547 U.S. 813, 821 (2006)).)

---

[6] Gina did not testify at trial.

Testimonial evidence includes statements that are the functional equivalent of court testimony, such as affidavits, depositions, confessions, or "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available to use at a later trial." (*Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004)).) Judge Skomal concludes that Gina's statement made when she found the hammer in Petitioner's bedroom was not testimonial and therefore Petitioner's Sixth Amendment right was not violated. (*Id.* at 37.) Judge Skomal also finds that even if Petitioner's Sixth Amendment right was violated, such an error was harmless because Petitioner has not demonstrated the manner in which the hammer was found had a substantial or injurious effect on the jury's verdict. (*Id.* (citing *Brecht*, 507 U.S. at 623).)

In response, Petitioner argues that "[t]he individual who found the evidence must be the one testifying, to dispell [sic] any possibility of error." (R&R Obj. 55 (citing *United States v. Bernes*, 602 F.2d 716 (5th Cir. 1979)).) Petitioner contends that even if "the evidence" met an exception to the rule against hearsay evidence then state law excludes hearsay evidence because it prejudiced him under Evidence Code § 353. (*Id.* at 55–56.) He further contends that he was prejudiced because the person who found the hammer, Gina, did not testify. (*Id.* at 56 (citing *United States v. Summers*, 566 F.3d 192 (4th Cir. 2011); and *Dias v. State*, 95 Nev. 710 (1979) (per curiam)).)

The Sixth Amendment requires "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. *Washington v. Crawford* held that the Amendment guarantees a defendant's right to confront those "who 'bear testimony'" against him. 541 U.S. at 51. The Supreme Court went on to explain what constitutes testimonial statements, which this Court quotes at length:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably

expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52 (internal quotations marks and citations omitted).

Here, Gina found the hammer introduced against Petitioner and he was unable to confront Gina before trial. The only remaining inquiry is whether Gina's evidence constitutes a "testimonial statement." Critically, Gina's discovery of the hammer was not a statement, but rather an action. She found the hammer; any statements she made were incidental to the act of finding the evidence. Even if the Court were to construe the event in question as a statement, Gina's statements were not testimonial. Christopher testified that Gina and his sister were cleaning up the blood in his parents' bedroom. (RT 79.) He stated, "I myself did not personally find [the hammer]. I had so much going on. I believe Gina found it, and she immediately yelled for me." (*Id.* at 80.) Gina was cleaning the bedroom, not conducting an investigation. There was no indication that she expected to find anything for use at trial; indeed, as Petitioner points out, the police did not find the hammer during their initial search. Therefore, Gina did not give a pretrial statement that she expected would be used prosecutorially. Without a testimonial statement there can be no Sixth Amendment violation.

Judge Skomal also concluded that even if Petitioner's Sixth Amendment right was violated, such violation amounted to harmless error. (R&R 37.) Judge Skomal reasoned that Petitioner has not demonstrated how any error in the hammer's chain of custody had any impact on the outcome of the trial. (*Id.*) Petitioner objects stating that combining the problematic testimony with the illegally seized evidence would mean that a reasonable jurist would conclude the testimony had substantial merit and would be believed. (R&R Obj. 58.)

Petitioner's burden to show a trial court error resulted in actual prejudice is substantial. Under *Brecht*, "relief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2197–98 (2015) (internal quotation marks omitted) (quoting *O'Neal v. McAninch*, 513 U.S. 431, 436 (1995)). Petitioner does not explain how the way in which the hammer was discovered created a substantial and injurious effect. Instead, he concludes that the mere existence of the defect, combined with "illegally seized evidence," (R&R Obj. 58), would sway a jury. Without further explanation, the Court cannot credit Petitioner's conclusory statements. Moreover, the jury had ample testimony concerning the discovery of the hammer even if there was a defect in how it was handled after the discovery. The Court finds that any error was harmless.

In sum, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** Judge Skomal's R&R as to Petitioner's fourth claim.

## VI. Claim Five: Excessive Force and Law Enforcement Perjury

Petitioner's fifth claim is that the police used excessive force during his arrest and committed perjury at trial; therefore, their testimony and crime scene evidence should have been excluded as "fruit of the poisonous tree." (R&R 37 (citing Petition 21–22, 27, 42–47, 58).) Petitioner claims that police used excessive force because they shot Petitioner at point-blank range with a rifle after he surrendered in his parents' bedroom. (*Id.*) Petitioner further contends that the police lied about shooting him with a rifle because an AR-15 rifle fires a .223 caliber round, but Petitioner's treating physician removed a 9-millimeter bullet from his body the night of the incident. (*Id.*)

The first issue here is sufficiency of evidence under *Jackson*. Specifically, the Court must resolve whether Petitioner could be convicted of resisting an officer if the officers used excessive force against Petitioner. The jury received an instruction that an arrest in unlawful "when force is unreasonable or excessive." (*Id.* at 38 (quoting RT 560).) Judge Skomal details the evidence that the jury heard at trial as to the reasonableness of force,

including testimony that the officers used 40-millimeter non-lethal rubber rounds on Petitioner to no effect. (*See id.* at 38–39.) Judge Skomal further states that the jury heard that Petitioner did not have an exit wound and bullet fragments remained in Petitioner's body. (*Id.* at 38.) Consistent with the testimony from multiple police officers at the scene when the round was fired, bullet fragments were found at the top of the stairs where the police state Petitioner was standing. (*Id.*) There were no bullet fragments in the bedroom nor was there an exit wound, both of which would have occurred had Petitioner been shot at point-blank range as he contends. (*Id.*) Judge Skomal applies the *Jackson* standard and concludes that there was sufficient evidence to support a verdict that Petitioner was guilty of resisting lawful arrest. (*Id.* at 39.) Judge Skomal also notes that the Court must defer to the jury's findings on witness credibility. (*Id.* at 40.)

Petitioner responds that his claim is that an officer shot him at point-blank range with a 9-millimeter service weapon and the officer perjured himself to cover up that fact. (R&R Obj. 59.) Petitioner then goes on to state that the evidence demonstrating that the police manufactured a crime scene to cover up their wrongdoings was not presented at trial. (*Id.* at 58–59.) And, his attorney failed to challenge the evidence presented by the prosecution. (*Id.* at 59.) Petitioner also contends that his counsel failed to challenge the police officers on the excessive force issue. (*Id.*) Petitioner reiterates that the police failed to protect him and used excessive force against him. (*Id.* (citing, e.g., *Fletcher v. O'Donnell*, 867 F.2d 791 (3d Cir. 1989)).)

The Court applies the two-part *Jackson* standard. "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 319). Second, a court must determine whether this evidence is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration in original) (quoting *Jackson*, 443 U.S. at 319). The Court applies the two-part *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Davis*, 384 F.3d at 639 (quoting *Jackson*, 443 U.S. at 324 n.16).

Petitioner was charged with one count of violating California Penal Code § 69, which prohibits a person from deterring or preventing a law enforcement officer from performing their duty or knowingly resisting the officer. "The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty." *People v. Bernal*, 222 Cal. App. 4th 512, 517 (Ct. App. 2013) (emphasis omitted) (quoting *In re Manuel G.*, 16 Cal. 4th 805, 814 (1997)). However, it is axiomatic that an officer who uses excessive force renders it impossible for the arrestee to resist a police officer in performance of his duty. *See People v. Olguin*, 119 Cal. App. 3d 39, 44–45 (Ct. App. 1981) (collecting cases). Put differently, excessive force negates a resisting arrest charge.

The Court agrees with Judge Skomal that the evidence, viewed in the light most favorable to the prosecution, is sufficient to allow a rational trier of fact to find Petitioner violated Penal Code § 69. The corollary finding is that the officers did not use excessive force on Petitioner. The evidence established that Petitioner had a blood alcohol level of .23 percent the night of the incident. The police fired several non-lethal rounds and struck Petitioner to no effect. (RT 268.) The police officers testified that Officer Kaldenbach shot Petitioner with an AR-15 rifle as he turned with a knife towards his father Milford. (*Id.* at 269–70, 281–82.) Petitioner's theory that he was shot after he was disarmed is not supported by the evidence. The bullet fragments recovered from the scene were found at the top of the stairs and not in the bedroom. Had Petitioner been shot in the bedroom after he was disarmed, then a juror would expect bullet fragments to be found in the bedroom and would expect an exit wound because Petitioner would have been shot at point-blank range—neither occurred. The evidence demonstrates that Petitioner was shot on the stairs, as the police testified.

Petitioner's objections are unavailing and self-serving. He claims that the police officers manufactured the crime scene, (R&R Obj. 60), but provides no evidence to support such an argument. Petitioner argues that police officers must use alternatives to lethal

force.  (*Id.*)  Yet, the police fired several non-lethal rounds that did not stop Petitioner. Petitioner contends that nowhere in a police report or testimony does it state an officer saw the rifle being fired, which he suggests discredits the officers' testimony.  (*Id.* at 61.) Rather, he contends that the officers modified the evidence and the crime scene. (*Id.*)  Even if the jury were to completely discount the police testimony, sufficient objective evidence, such as the bullet fragment location, corroborates the police version of events.  No such evidence exists to support Petitioner's claim.  Therefore, the jury had sufficient evidence to allow it to find Petitioner guilty beyond a reasonable doubt of violating Penal Code § 69. Thus, there was no excessive force claim.

Accordingly, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** Judge Skomal's R&R as to the fifth claim.

## VII.  Claim Six: Chain of Custody

Petitioner's sixth claim is that the chain of custody for the hammer was improper because the police did not find the hammer while searching the house.  Instead, his relatives found the hammer while cleaning the bedroom and picked it up with their bare hands, thus contaminating the evidence. (Petition 27, 47, 58.)  Judge Skomal characterized Petitioner's claim as speculative.  Further, Petitioner has not demonstrated how any defects in the chain of custody actually harmed his constitutional rights.  (R&R 40–41 (citing *People v. Catlin*, 26 Cal. 4th 81, 134 (2001); and *People v. Hall*, 187 Cal. App. 4th 282, 294 (Ct. App. 2010)).)  Judge Skomal concluded that Petitioner has not demonstrated that his due process rights were violated by the manner in which the hammer was found or how the evidence was handled after it was found.  (*Id.* at 41.)

Petitioner objects on the grounds that a prosecutor must establish a proper foundation to use evidence at trial.  (R&R Obj. 73 (citing Cal. Evid. Code §353).)  He further argues that the only witness that testified as to the evidence was Milford, but because Milford allegedly abused Beverly, Beverly should have been allowed to testify at trial.  (*Id.*)  Next, Petitioner contends that because the evidence was obtained through an unlawful search, the evidence should have been excluded.  (*Id.* at 74.)  Petitioner reasons that his rights were

violated because the police investigators thoroughly searched the room and did not find the hammer, but a private citizen was able to find the hammer with relative ease. (*Id.*) Further, Petitioner's privacy rights were violated by his family members searching for evidence. (*Id.* at 75.)

A federal habeas court does not sit in review of purported violations of state evidentiary issues. *See Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Rather, a federal court only considers whether a defendant was denied his due process right to a fundamentally fair trial and whether the "admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair." *Id.* (citing *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986), *cert. denied*, 479 U.S. 1068 (1987); *see Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir. 1986) ("The . . . issue is not whether introduction of [the evidence] violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial so arbitrary and fundamentally unfair that it violated federal due process.").

Petitioner's piecemeal arguments does not speak to the ultimate issue in his sixth claim: how specifically did a supposed defect in the chain of custody render his trial fundamentally unfair. First, Petitioner has not established that there was a defect in the chain of custody. The California Court of Appeal has summarized the relevant standard as follows:

> A chain of custody is adequate when the party offering the evidence shows to the satisfaction of the trial court that, "taking all the circumstances into account including the ease or difficulty with which the particular evidence could have been altered, it is reasonably certain that there was no alteration." The reasonable certainty requirement is not met when some "vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received. Left to such speculation the court must exclude the evidence." However, when there is only the barest speculation that the evidence was altered, "it is proper to admit the evidence and let what doubt remains go to its weight."

*Hall*, 187 Cal. App. 4th at 294 (internal citations and quotation marks omitted) (citing *Catlin*, 26 Cal. 4th at 134). Here, Petitioner speculates that the mere fact that his relatives found the hammer resulted in some sort of contamination. Petitioner does not explain what contamination occurred. In contrast, Petitioner's trial counsel pointed to the fact that only Milford and Beverly's DNA were found on the hammer in her closing argument. (RT 616.) Petitioner acknowledged that only Milford and Beverly's DNA was on the hammer. (R&R Obj. 73.) A juror might expect a contaminated hammer to have DNA from third parties; yet, this was not the case. There is no direct evidence that a third party altered the chain of possession. Petitioner's argument is the "barest [of] speculation" rather than a "vital link in the chain of possession" was not accounted for. *Hall*, 187 Cal. App. 4th at 294. Under California law, a trial court could have found the evidence to be admissible.

This Court does not sit in review of state evidentiary rules, but the lack of evidence to support a chain of custody argument favors the conclusion that there was no fundamental unfairness in the trial. The fact that only Beverly and Milford's DNA was found on the hammer demonstrates that no other party contaminated the evidence. Petitioner's remaining objections speak to claims addressed in other sections. For example, he accuses his defense counsel of failing to object to the evidence and failing to apply for the exclusionary rule. (R&R Obj. 74.) He contends that Beverly should have been allowed to testify at trial. He points to inconsistencies in Christopher's testimony. None of these arguments demonstrate a fundamental unfairness in the trial resulting from the chain of custody of the hammer. Therefore, the Court finds that Petitioner has not demonstrated any fundamental unfairness resulting from a purported defect in the chain of custody.

The Court **OVERRULES** Petitioner's objections and **ADOPTS** Judge Skomal's R&R as to Petitioner's sixth claim.

## VIII. Claim Seven: Ineffective Assistance of Counsel

Petitioner argues his trial counsel was ineffective for three reasons. First, he generally argues that his counsel should have challenged the police officer's statements as to what caliber bullet with which Officer Kaldenbach shot Petitioner. (Petition 53.)

Second, Petitioner contends that his counsel should have objected to photographs shown at trial depicting substantial amounts of blood, which could have prejudiced the jury against Petitioner. (*Id.* at 54.) Third, he asserts that his counsel failed to object to Christopher's testimony as it was hearsay and biased.[7] (*Id.* at 41.)

Under federal law, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.* at 687. The proper measure of attorney performance is "simply reasonableness under prevailing professional norms." *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* at 689–90. To determine whether errors of counsel prejudiced the defense, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. A court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one. *Id.* at 697.

The Court begins by discussing ineffective assistance of counsel claims raised, for the first time, in Petitioner's Objections to the R&R. Then, the Court reviews each of Petitioner's arguments raised in the Petition.

/ / /

---

[7] Respondent and Judge Skomal did not address Petitioner's third argument—that his counsel should have objected to Christopher's testimony. This is understandable because Petitioner's claims were scattered across the entire Petition with minimal organization. However, Petitioner renewed this argument in his Traverse. (Traverse 52.) Because Petitioner raised this claim in his Petition, the Court will analyze it in this Order.

### A. Ineffective Assistance of Counsel Claims Raised in R&R Objections

As previously stated, Petitioner only raised three grounds for his ineffective assistance of counsel in his Petition. In his Objections to the R&R, Petitioner raises new ineffective assistance of counsel claims for the first time. These claims include, but are not limited to: Petitioner did not have a contract with the attorney who represented him on appeal, (R&R Obj. 35); the appellate attorney failed to state that evidence obtained by a private citizen violated Petitioner's Fourth and Fourteenth Amendment rights, (*id.* at 39); Petitioner's trial counsel failed to show that Beverly had been seen by a psychiatrist prior to asking for a competency hearing, (*id.* at 44); and Petitioner's trial counsel should not have "eliminated" Beverly as a witness to testify at trial, (*id.* at 45).

These new allegations all suffer from a common defect; Petitioner did not raise them in his Petition, or even his Traverse. The law is clear that a district court has the discretion to consider new habeas claims or evidence raised for the first time in an objection to a magistrate judge's R&R. *Brown v. Roe*, 279 F.3d 742, 744–45 (9th Cir. 2002); *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). Because Petitioner raised these new claims in his Objections, he deprived the California courts, Respondent, and Magistrate Judge Skomal the opportunity to hear and respond to his claims. Therefore, the Court exercises its discretion and does not consider Petitioner's newly raised ineffective assistance of counsel claims.

### B. Failure to Challenge False Statements

Petitioner argues trial counsel was ineffective for failing to challenge testimony regarding the bullet caliber with which the police shot Petitioner. Judge Skomal explains Petitioner's argument as follows:

> He states that he told defense counsel that the surgeon told his assistant that he removed fragments of a 9-millimeter bullet, and that an MRI shows that he currently has a 9-millimeter bullet in his body, but counsel did not present that evidence at trial. (Traverse at 11.) His surgeon testified at trial that Petitioner had an entry wound from a bullet, but no exit wound, and that a CAT

scan revealed eight bullet fragments in his body, which is typical when a bullet hits a bone. (RT 387–88.)

(R&R 42.) Petitioner's theory is that the police officer's AR-15 rifle was a .223 caliber round and therefore his counsel was deficient for failing to challenge the testimony as to the bullet caliber. (*See id.*) Judge Skomal concludes that Petitioner does not identify how he knows that the surgeon would have testified that the fragments were from a 9-millimeter bullet had he been called to testify. (*Id.*)

Petitioner responds that his attorney withheld evidence from the court in violation of various state statutes and ethical rules. (R&R Obj. 76.) He states the following, "Defence [sic] counsel knew before and during discovery, the exact caliber of the bullet that the petitioner was shot with." (*Id.*) Petitioner further states that his counsel had in her possession the report from Scripps Hospital that "all the fragments" were in Petitioner's body and not in the ceiling as the prosecution's witnesses stated. (*Id.* at 77.)

Petitioner's argument hinges on his contention that his counsel knew that the prosecution was lying about the bullet caliber used to shoot Petitioner and erred by failing to investigate or challenge the prosecution. His ineffective assistance of counsel argument further requires that such an error, if true, prejudiced his defense. As Judge Skomal points out, Petitioner's objections offers no basis for his statement that the bullet fragment was determined to be from a 9-millimeter bullet and not a .223 caliber bullet. Petitioner included in his Objections copies of what appears to be the laboratory results from when he was shot. The report states: "Bullet small fragments noted to overlie the left chest, and the large main piece of the bullet is noted to overlie the right chest." (*Id.* at 70.) There is no further description of the bullet fragments and no reason to suggest a 9-millimeter shell was fired. Dr. Fady Nasrallah, the physician who attended both Beverly and Petitioner, testified that she treated Petitioner for a bullet wound to his shoulder. (RT 376.) She further testified that she believed that the bullet wound was an entry would because there was no exit wound and that a CAT scan revealed eight metal fragments inside Petitioner's

body. (*Id.* at 387–88.) There is no testimony regarding the caliber of bullet or an opportunity for her to determine the caliber.[8]

Petitioner puts forward no evidence or citation to the record demonstrating how he knows the bullet caliber was a 9-millimeter rather than a .223 bullet. The burden is on Petitioner to show how his counsel was deficient, but conclusory statements that his counsel failed to pursue the bullet caliber issue does not suffice. For example, Petitioner states that a ballistic report would have been created for an officer-involved shooting, but does not cite to evidence of such a report in the record. Even if Petitioner was able to prove the bullet caliber was a 9-millimeter, such a finding would not alter the trial's outcome. The jury had additional, sufficient evidence to find that the police officers used reasonable force and that Petitioner resisted arrest. *See supra* section VI. Petitioner's counsel was not deficient for failing to inquire about the bullet caliber. Therefore, Petitioner fails to state a claim for ineffective assistance of counsel as to the bullet caliber argument.

### C. *Failure to Object to Introduction of Photographic Evidence*

Petitioner alleges his defense counsel should have objected to the introduction of inflammatory photographs of blood at the scene of the crime. (Petition 54.) Judge Skomal explains that several witnesses testified that Beverly was bleeding profusely when the police arrived at her house. (R&R 43.) Beverly told the 911 dispatcher that "I am bleeding to death." (*Id.* (quoting Lodgment No. 2, at 13).) Officer Weber testified that he saw large amounts of blood on the kitchen floor. (RT 209.) Judge Skomal surveyed the defense counsel's efforts in regard to the photographs. Petitioner's counsel filed a pre-trial motion to exclude the photographs and she argued to the jury that it was uncertain whose blood was on the floor of the kitchen. (R&R 43 (citing CT 25–26).) Judge Skomal concluded that Petitioner had not demonstrated that defense counsel's performance was deficient. (*Id.*)

---

[8] For example, one would not expect a trauma physician to be able to reconstruct fragments of a bullet and determine its forensics. This cuts against Petitioner's claims that his attorney should have asked Dr. Nasrallah about the caliber of the bullet.

In response, Petitioner acknowledges that his counsel filed pretrial motions seeking to exclude the photographs, but contends that an objection still should have been made at trial. (R&R Obj. 79–80.) Petitioner offers no further objections to the R&R as to this argument. The Court agrees with Judge Skomal; as Petitioner acknowledges, defense counsel attempted to exclude the photographs before trial. When the trial court ruled against Petitioner, his defense counsel did not give up but instead argued to the jury that they could not be certain as to whose blood was depicted in the photographs. Petitioner's only rebuttal is that defense counsel should have objected when the photographs were offered. Petitioner does not explain how an objection would have prevailed where a pretrial motion failed. And, his defense counsel had the capacity to make tactical trial decisions. *See Strickland*, 466 U.S. at 689 (instructing courts to "evaluate the conduct from counsel's perspective at the time" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Therefore, the lack of objection was a tactical decision committed to Petitioner's trial counsel.

Furthermore, even if his trial counsel erred by failing to object, a substantial amount of other sufficient, independent evidence existed that would allow the jury to find Petitioner guilty beyond a reasonable doubt. *See Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991). *See, e.g.*, *supra* section I (discussing sufficiency of evidence as to elder abuse charge). Therefore, any failure to object amounts to harmless error.

### D.    Failure to Object to Christopher's Testimony

In his Petition, Petitioner contends that his trial counsel should have challenged his Christopher's testimony because he made false claims, was biased because Christopher did not want Petitioner to receive any payment from the family trust, and his testimony was hearsay. (Petition 41.) In his R&R Objection, Petitioner further contends that his counsel should have objected to the illegal search of his premises that resulted in the seizure of evidence, presumably the hammer that Gina found. (R&R Obj. 80.)

The trial record reveals that defense counsel objected to several statements Christopher made during his testimony. (RT 87–89.) She also asked Christopher on cross

examination who found the hammer. (*See id.* at 82–84.) At closing argument, defense counsel pointed out that the police did not find the hammer when they searched the bedroom, but Petitioner's relatives did find it. (*Id.* at 616–17.) Taken together, Petitioner has not illustrated how his counsel's performance was deficient. Defense counsel objected to Christopher's testimony where it was appropriate to do so. The Court finds that Petitioner has not demonstrated that his counsel's performance was constitutionally deficient.

The Court **OVERRULES** Petitioner's objections and **ADOPTS** the R&R as to this claim.

## IX. Petitioner's Request for Evidentiary Hearing

Petitioner requests that the Court conduct an evidentiary hearing. (*See* Traverse 7.) Judge Skomal recommends denying the evidentiary hearing request. (R&R 45–46.) A district court presented with a request for an evidentiary hearing "must determine whether a factual basis exists in the record to support the petitioner's claim." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). If the petitioner has failed to develop the factual basis, the Court must deny a hearing "unless the applicant establishes one of the two narrow exceptions set forth in § 2254(e)(2)(A) & (B)."[9] *Id.* (citing *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998)). If the petitioner has not "failed to develop" the facts in state

---

[9] 28 U.S.C §2254(e)(2) provides:

> [T]he court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously made unavailable; or
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

court, "the district court may proceed to consider whether a hearing is appropriate, or required." *Id.* (citing *Cardwell*, 152 F.3d at 337).[10]

The Court finds no basis for an evidentiary hearing because no factual basis exists to support Petitioner's arguments and Petitioner has also not established that either of the exceptions in § 2254(e)(2) apply here. Thus, the Court **DENIES** the request for an evidentiary hearing.

## X. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). The federal rules governing habeas cases brought by state prisoners require a district court that dismisses or denies a habeas petition to grant or deny a certificate of appealability in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. For the reasons set forth above, Petitioner has not shown "that reasonable jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 743, 484 (2000). Accordingly, the Court **DECLINES** to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's Objections, **ADOPTS** the R&R and **DENIES** each claim of Petitioner's Petition for Habeas Corpus, (ECF No. 1).

/ / /

---

[10] An evidentiary hearing is required if any of the following six factors are met: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; and (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing. *Townsend v. Sain*, 372 U.S. 293, 313 (1963). The Court finds these factors are not met.

The Court further **DENIES AS MOOT** Petitioner's Motion for Review, (ECF No. 48) and **GRANTS** Petitioner's *ex parte* Motion, (ECF No. 50). The Clerk **SHALL** close the file.

    **IT IS SO ORDERED.**

Dated: July 16, 2018

Hon. Janis L. Sammartino
United States District Judge

16-CV-408 JLS (BGS)